847 So.2d 415 (2003)
In RE REPORT AND RECOMMENDATIONS OF the COMMITTEE ON THE APPOINTMENT AND ASSIGNMENT OF SENIOR JUDGES.
No. SC02-593.
Supreme Court of Florida.
May 1, 2003.
Gilbert S. Goshorn, Jr., Chair, Committee on the Assignment of Senior Judges, Gainesville, FL, for Petitioner.
Kevin P. O'Connor of O'Connor, Chimpoulis, Restani, Marrero & McAllister, *416 P.A., Coral Gables, FL; Martin D. Kahn, Miami, FL; Brynn Newton, Flagler Beach, FL; The Honorable Stan R. Morris, Chief Judge, Eighth Judicial Circuit, Gainesville, FL; Eric Hewko, President, American Board of Trial Advocates, Palm Beach Chapter, North Palm Beach, FL; The Honorable James Roy Bean, Chief Judge, Third Judicial Circuit, Perry, FL; The Honorable William L. Gary, Chief Judge, Second Judicial Circuit, Tallahassee, FL; The Honorable William L. Blackwell, Chief Judge, Twentieth Judicial Circuit, Punta Gorda, FL; The Honorable Joseph P. Farina, Chief Judge, Eleventh Judicial Circuit, Miami, FL; Lake H. Lytal, Jr., West Palm Beach, FL; Kevin C. Smith, West Palm Beach, FL; Fredric G. Levin of Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, P.A., Pensacola, FL; Sheldon J. Schlesinger, Fort Lauderdale, FL; Theodore Babbitt of Babbitt, Johnson, Osborne & LeClainche, West Palm Beach, FL; The Honorable Juy Makham Pittman, Chief Judge, Fourteenth Judicial Circuit, Panama City, FL; The Honorable Charles B. Curry, Chief Judge, Tenth Judicial Circuit, Bartow, FL; Steven G. Mason, Orlando, FL; The Honorable Marc A. Cianca, Chief Judge, Nineteenth Judicial Circuit, Stuart, FL; The Honroable Dale Ross, Chief Judge, Seventeenth Judicial Circuit, Fort Lauderdale, FL; The Honorable Thomas M. Gallen, Chief Judge, Twelfth Judicial Circuit, Bradenton, FL; Thomas C. Heath, John W. Mauro and Hal B. Anderson of Billing, Cochran, Heath, Lyles & Mauro, P.A., and Catholic Health East, Pediatrix Medical Group, Inc., and Holy Cross Hospital, Inc.; Louise H. McMurray, Douglas M. McIntosh and James C. Sawran of McIntosh, Sawran, Peltz & Cartaya, Miami, FL; Steven G. Koeppel of Troy, Yeslow & Koeppel, President of Southwest Florida Chapter FLABOTA, Fort Myers, FL; and The Honorable Bruce W. Jacobus, Chief Judge, Eighteenth Judicial Circuit, Viera, FL; Filing Comments.
PER CURIAM.
This matter is before the Court based on the February 22, 2002, submission of the report and recommendations of this Court's Committee on the Appointment and Assignment of Senior Judges (Committee).[1] We have jurisdiction. See art. V, § 2(a), Fla. Const.
Article V, section 2(b) of the Florida Constitution gives the chief justice of this Court "the power to assign justices or judges, including consenting retired justices or judges, to temporary duty in any court for which the judge is qualified." The chief justice is also authorized "to delegate to a chief judge of a judicial circuit court the power to assign judges for duty within that circuit." Art. V, § 2(b), Fla. Const. Retired justices or judges who are serving on assignment to such temporary judicial duty are referred to as "senior judges." Fla. R. Jud. Admin. 2.030(a)(3)(D).
The Committee was established after this Court considered a report from the Senior Judge Workgroup of the Judicial Management Council's Committee on Trial *417 Court Performance and Accountability. That workgroup developed a set of recommendations regarding the utilization, allocation, and management of senior judges. The Court asked the Committee to address the areas of appointment and assignment of senior judges and to develop recommendations for each. The Court identified several areas in which it sought policy guidance on the appointment process, including whether there is a need for a formalized certification process for senior judges. If a formalized certification process was not recommended, then the Committee was asked to recommend a process to determine the eligibility of senior judges for assignment to various courts. If a formalized certification process was recommended, then the Committee was asked to recommend policies and procedures that should be adopted, including the criteria for certifying senior judges; whether age should be a factor in certification; who should review the certification and make the determination of approval or denial; whether there should be an appeal of a certification denial; whether there should be a continuing review or evaluation and the procedures for such; and whether there should be a continuing education requirement for senior judges. The Court also specified a number of questions regarding the assignment process to be addressed in the Committee's recommendations, including whether there should be assignment restrictions relating to the level of court, the jurisdiction, the number of days to be served in a year, and the type of cases to be handled; and whether there should be formal guidelines or limitations for the implementation of senior judge service.
In order to formulate its recommendations, the Committee reviewed existing policies and practices in Florida and other states and solicited the input of a variety of participants from throughout the judicial system. The Committee met three times over the course of six months: in Tallahassee in August 2001, in Tampa in November 2001, and again in Tallahassee in January 2002. The Committee submitted its report and fifteen recommendations to the Court on February 22, 2002. The report and recommendations were published in the Florida Bar News on April 15, 2002, along with a request that comments be filed with this Court on or before May 15, 2002. The Florida Bar News also published an announcement that oral argument before this Court was scheduled for June 7, 2002.
After hearing oral argument on the Committee's recommendations and carefully considering the comments filed, we approve the fifteen recommendations, with the exception of part of recommendation eleven relating to the assignment of senior judges in complex cases. We commend the Committee for a job well done.

REVIEW OF THE COMMITTEE'S RECOMMENDATIONS
Each of the Committee's recommendations is listed below, followed by an explanation or elaboration of that recommendation. The Committee's entire report is set forth fully in the appendix to this opinion. Recommendations two through eight deal with various issues relating to eligibility to serve as a senior judge; recommendations nine through thirteen cover the assignment of senior judges; and recommendations fourteen and fifteen address the implementation of the system of ongoing eligibility review and assignment. We review each of the recommendations in turn below.

Recommendation One. The Committee recommends a significant increase in senior judge compensation in order to encourage and recruit the services of qualified retired judges.
We endorse this recommendation. As the Committee noted in its report, senior *418 judges perform the work of approximately thirty-five full-time judges at a small fraction of the cost of that number of full-time judges. Further, while many more remunerative work opportunities are available to retired judges, many of them elect to continue serving the citizens of Florida as senior judges out of an abiding commitment to public service. Thus, we conclude that the compensation rate for senior judges should be substantially increased.
Recommendation Two. Potential senior judges should be subject to a process to determine eligibility for assignment that includes the following components: screening to ensure compliance with continuing education requirements; employment screening including inquiries to chief and administrative judges with whom the candidate has worked; inquiry with the Judicial Qualifications Commission (JQC) regarding whether the retired judge is the subject of a pending investigation; and consideration of input about the retired judge's work from attorneys who appear before the court.
The Committee determined that there was no need for a formal certification process for senior judges. We endorse the Committee's recommendation of an eligibility screening process to ensure that the retired judge is current with educational requirements, that the judicial leadership within the retired judge's resident court do not have concerns about the judge's present ability to serve, and that the judge has no pending investigations before the JQC. This screening process will also consider attorney input regarding the judge's work.
Recommendation Three. A judge or justice who has been defeated in an election or retention vote in their last judicial position should not be eligible to serve as a senior judge.
While qualified and competent judges may occasionally fail to win re-election or retention, we agree with the Committee that concerns of public trust and confidence and deference to the constitutional electoral process dictate that the expressed will of the voters prevail. Thus, judges or justices who fail to win reelection or retention in their last judicial position are not eligible for senior judge service.
Recommendation Four. A judge who is otherwise qualified to serve as a senior judge, and who applies for assignment as a senior judge within a year of retirement, should be eligible for assignment without review of attorney input. An initial determination of eligibility would therefore be based on education, employment, and Judicial Qualifications Commission screenings, but would not require review of attorney input.
We agree with the Committee's recommendation relating to the attorney feedback process for recently retired judges. Accordingly, judges who have honorably retired and are otherwise eligible to serve as senior judges need not be subjected to the attorney feedback process when they initially apply for assignment, provided that the judges apply within a year of their retirement.
Recommendation Five. Senior judges who have been determined to be eligible for assignment who have not reached the constitutionally required age of retirement should be subject to review every three years. Senior judges who have been determined to be eligible for assignment who have reached the constitutionally required age of retirement should be subject to annual review. Educational requirements, however, should be reviewed only every three years in all cases, consistent with the existing court education cycle.
We agree with the Committee that the quality of judicial work performed by senior judges in Florida is consistently very *419 high. We also endorse the Committee's recommendation that the work of all senior judges be subject to periodic review. Further, in recognition of the mandatory retirement provision in the Florida Constitution[2] and the diminished ability to perform complex tasks that sometimes accompanies advancing years, we endorse the Committee's recommendation of a two-tiered review system based upon the age of the senior judge. Those senior judges who have not reached the constitutionally required age of retirement will be evaluated every three years. When a senior judge reaches the constitutionally required age of retirement, he or she will be evaluated annually. Educational requirements for all senior judges will be reviewed every three years, which coincides with the current court education cycle. See Fla. R. Jud. Admin. 2.150(b)(2) ("Each judge and justice shall complete a minimum of 30 credit hours of approved judicial education programs every three years."); Fla. R. Jud. Admin 2.150(b)(1) ("Retired judges who have been approved by the supreme court to be assigned to temporary active duty ... shall also comply with the judicial education requirement.").
Recommendation Six. Continuing service as a senior judge should require periodic review, based on education, employment, and Judicial Qualifications Commission screening, and on the recommendation of a review board after consideration of input from attorneys who appear before the court.
The Committee's recommendation of periodic review rests on the concept of accountability. While sitting judges are elected or appointed through a merit-selection process,[3] senior judges are assigned under the constitutional authority of the chief justice. Further, while sitting judges are subject to removal through an election or a retention vote, voters do not have a similar opportunity to retain or remove a senior judge. Accountability for the continued judicial authority of the senior judges rests with the chief justice and should be subject to a structured review process. We endorse the Committee's recommendation of this structured review process. In making a determination of continued eligibility, the chief justice should consider the three elements of the initial review (education, employment, and JQC screening) and the recommendation of the review board that receives input from attorneys who have appeared before the court.
Recommendation Seven. The review of senior judges should be conducted by five review boards, with one board created to serve each appellate district. Review boards should solicit attorney input regarding any senior judge who is scheduled for review, as well as any judge within that appellate district who requests assignment and has been retired for more than a year. The review boards would make a recommendation to the chief justice whether a candidate is eligible or not eligible for assignment. Recommendations of review boards should not be subject to appeal.
We endorse the Committee's recommendation that a review board be created in each of the five appellate districts. The Committee opted for district-wide review boards rather than circuit-wide boards or a single statewide board in order to include representatives who have first-hand knowledge *420 of the judges being reviewed and representatives who have experience in other jurisdictions. District-wide review boards will also be the most efficient in terms of the accompanying administrative activity. The Committee estimates that each district-wide review board will conduct thirty to forty reviews annually, which should not prove onerous to the review board members. If a single statewide review board were appointed, the task of conducting 150 to 200 annual reviews could be overwhelming to the board members.
The Committee recommends that the district review boards organize their work on an annual cycle and conduct all reviews during one or two meetings. Each district review board shall include the chief judge of each circuit court in the district or a designee, the chief judge of the district court of appeal or a designee, and an equal number of attorneys. The circuit court chief judges and the district court chief judge shall each appoint one attorney member. Where a senior judge serves in multiple jurisdictions, the review will be conducted by the board in the district in which the judge has performed the most service in the present eligibility period.
Recommendation Eight. The information collected for purposes of review should be made available to circuit and district chief judges prior to the board's recommendation. The information should be sent to the chief judges to aid them in the assignment and management of senior judges, and then forwarded to the relevant review board.
We agree with the Committee that the information collected by review boards about senior judges who are eligible for assignment would be of great assistance to the chief judges who make assignment decisions. Thus, this information will be forwarded to each circuit and district chief judge by the permanent workgroup, discussed in recommendation fifteen below. Additionally, the workgroup should forward the same information to the chief justice.
When the review boards are formulating their recommendations regarding a retired judge's eligibility for senior judge service, they should be guided by the following factors: scholarship, communication, case management and productivity, temperament, work ethic, good health, and integrity.[4] Scholarship encompasses the judge's knowledge and understanding of substantive, procedural, and evidentiary law, the judge's attentiveness to factual and legal issues before the court, and the judge's proper application of judicial precedent and other appropriate sources of authority. Communication includes the clarity of the judge's bench rulings and other oral communications, the quality of the judge's written opinions with specific focus on their clarity and logic, the judge's ability to explain the facts of a case and the legal precedent at issue, and the judge's sensitivity to the impact of demeanor and other nonverbal communications. Case management and productivity focuses on whether the judge effectively manages the court docket and promptly disposes of cases, including whether the judge devotes the appropriate time to all pending matters and discharges administrative responsibilities diligently. Temperament appraises the judge's ability to deal patiently with and be courteous to all parties and participants, as well as the judge's willingness to permit every person legally interested in a proceeding to be heard, unless precluded *421 by law or the rules of court. Work ethic assesses the judge's punctuality, preparation, and attentiveness, including whether the judge meets commitments on time and according to the rules of court. Because we are confident that attorneys and colleagues will express concerns about a judge's physical or mental ability to perform judicial duties and responsibilities during the peer review process, physical and mental examinations need not be a routine part of the review process.
Review boards are directed to provide a structured opportunity for input from attorneys who practice within the jurisdiction in which the senior judge has served. The attorney input should address the criteria listed above as they relate to the judge being reviewed. This opportunity for input could include published invitations to provide comment by letter, the use of a survey instrument, or other mechanisms. The method shall be left to the sound discretion of each review board in order to allow variation in response to the local legal culture and to promote innovation and experimentation.
Recommendation Nine. Annual guidelines from the chief justice regarding the assignments of senior judges should be consistent with the recommendations of this report.
The Florida Constitution specifically authorizes the chief justice "to delegate to a chief judge of a judicial circuit the power to assign judges to duty in that circuit." Art. V, § 2(b), Fla. Const. In order to provide guidance to the chief judges in exercising this authority, the Committee recommends that the chief justice provide annual guidelines regarding appropriate assignments for senior judges and that these annual guidelines be consistent with the Committee recommendations that are endorsed in this opinion.
While we agree with this guidelines recommendation, we also recognize that the chief judges, in consultation with administrative judges, are the most familiar with the skills of the judges and the workload needs of the courts. Thus, chief judges should have flexibility in making senior judge assignments.
Recommendation Ten. Senior judges should not be prohibited from serving in a superior court than that in which they were elected or appointed.
The same provision of the Florida Constitution that allows for the assignment of retired judges also allows for the assignment of active judges to temporary duty "in any court for which the judge is qualified." Art. V, § 2(b), Fla. Const. Under this authority, many active county court judges are assigned to preside over circuit court dockets, many active circuit court judges are assigned to sit on district court panels, and occasionally a district court judge is assigned to sit as an associate justice on this Court. Such experience can qualify a judge to serve in a court superior to the one to which the judge was appointed or elected. Thus, we endorse the Committee's recommendation that a senior judge not be prohibited from serving in a superior court.
Recommendation Eleven. While there should not be a per se prohibition against the use of senior judges in complex cases, guidelines regarding the assignment of senior judges should provide that, absent agreement by the litigants, chief judges are encouraged not to assign senior judges to preside over complex cases.
This recommendation relating to the assignment of senior judges to preside over complex cases[5] received the most attention in the comments filed with this Court and generated the most lively discussion *422 during oral argument. In general, the circuit chief judges strongly oppose any recommendation that would restrict the use of senior judges in complex litigation. Similarly intense sentiments were voiced by a number of practitioners in favor of a per se prohibition of senior judges presiding over complex litigation without the consent of the litigants.
We acknowledge the reality of problems in isolated cases with senior judges presiding over complex and lengthy trials. We urge and expect chief judges to respond directly to concerns expressed when such problems are presented to them. However, we do not conclude that either a per se prohibition on the assignment of senior judges to complex cases or a requirement that chief judges be required to show a good cause for such assignments, as some of the commentators have urged, is warranted or in the best interests of the administration of these cases. Further, we do not endorse the Committee's recommendation that the parties must give their consent for these assignments. Chief judges must be afforded deference and latitude in the management of judicial assignments and dockets, without being overruled by the litigants. We trust that the chief judges will select senior judges with the proper skills and experience to preside over complex cases when such assignments are necessary. As several of the chief judges noted in their comments, senior judges are often more experienced and qualified than active judges to handle complex cases in certain areas. Thus, litigants may benefit from the assignment of a highly qualified senior judge who has significant experience in a particular area of the law.
Furthermore, as noted under recommendation six, accountability for the continued judicial authority of the senior judges rests with the chief justice, who has delegated that power to the chief judges. Thus, chief judges are charged with periodically reviewing the progress of all cases assigned to senior judges to ensure expeditious and proper handling. Additionally, the structured periodic review process and information sharing in recommendations six through eight will alert the chief judge to any problems or complaints with a particular senior judge and appropriate actions can be taken. After receipt of these reports by the chief justice, we reserve the prerogative to revisit this issue in the future.
Thus, we agree with the Committee's recommendation that, in general, complex cases should be handled by full-time judges. However, when the chief judge deems it necessary, senior judges may be assigned to preside over complex cases.
Recommendation Twelve. There should not be a limit on the number of days that a senior judge serves within a calendar year.
The Committee concluded that the amount of time that a senior judge serves within a year should not be limited. While the constitutional language regarding senior judge service refers to "temporary duty,"[6] we agree with the Committee that an order of the chief justice assigning a retired judge to service for a period of one year or three years falls within the chief justice's constitutional authority. Repeated *423 reassignments for sixty-day periods are an unnecessary administrative burden for the chief justice's office.
As noted above, senior judges are compensated far less than what they can earn in private practice, yet continue to serve out of an abiding commitment to public service. Where there is a demonstrated need for qualified judges and a senior judge is available, artificial limitations on the extent of service should not prevent the workload from being addressed by a senior judge. The state and citizens of Florida benefit from the service of senior judges.
Recommendation Thirteen. Standard assignment orders to duty that allow for service statewide as a senior judge should be created for issuance by the chief justice.
The Committee concluded that there is no public policy benefit to limiting the assignment of senior judges to a certain jurisdiction, such as the jurisdiction of the judge's prior service or the jurisdiction of the judge's current residence. We endorse this recommendation that a senior judge who is eligible for assignment will be available for service statewide. As noted above, the accountability for senior judges rests with the chief justice rather than the voters of a particular circuit or district. Because the chief justice's authority and responsibility extend throughout the state, the chief justice can assign a senior judge to duty without limitation to the jurisdiction of the senior judge's prior service.'
Recommendation Fourteen. The Office of the State Courts Administrator (OSCA) should create and maintain an Intranet website to support the efficient and effective assignment and use of senior judges.
The Senior Judge Workgroup of the Committee on Trial Court Performance and Accountability of the Judicial Management Council previously recommended that a single senior judge management information system be created to replace the existing separate databases associated with senior judge authorization, compensation, and utilization. The Committee proposes that a centralized system be created and maintained on an Intranet website. We endorse this recommendation as such a system would promote the efficiency and effectiveness of using senior judges.
The Information Systems Division of OSCA has the capability to provide the technical infrastructure for a website that will be accessible to the circuit and district courts, this Court, OSCA, and all senior judges. This senior judge management information system should provide a registry of eligible senior judges that chief judges, administrative judges, and court administrators can consult. The registry should also provide information on the availability of senior judges, their areas of substantive expertise and preference, their current education information, and their locations. Circuit and district courts should be able to directly update the registry with information about senior judge service. The system should also provide automated links to finance and accounting functions to facilitate requests for reimbursement and links to the judicial education system to facilitate continuing education.
We hereby direct the permanent workgroup, which is discussed under recommendation fifteen below, to undertake the creation of a centralized information system to be accessible through an Intranet website.
*424 Recommendation Fifteen. A permanent workgroup should be created under the State Courts Administrator and the Clerk of the Supreme Court to address ongoing operational matters and procedures and to support the chief justice in implementing and maintaining the proposed system for the assignment and support of senior judges.
While the implementation of the proposed system of ongoing eligibility review and assignment will require a substantial commitment of resources, we agree with the Committee that there is no need for a continuing committee to address policy matters. Accordingly, we endorse the Committee's recommendation that a permanent workgroup be created to address the ongoing operational matters and procedures and to assist the chief justice with the proposed system. Should policy issues arise, the review boards and the chief judges can raise the issues with the chief justice, who in turn can either create a committee to address the issues or direct an existing Court committee to study the issues.
The workgroup will operate under the guidance of the State Courts Administrator and the Clerk of the Supreme Court and will include staff from the Finance and Accounting Division, Personnel Division, Court Services Division, Legal Affairs, Information Systems Division, and Strategic Planning Unit of the Office of the State Courts Administrator, and the Clerk of the Supreme Court or a designated staff member from the Clerk's Office. The workgroup will also include representatives from the trial court administrators.
The workgroup will be responsible for the following operational matters: the procedural steps for applying for senior judge assignment; the guidelines and procedural considerations regarding the assignment of senior judges; the development and application of an Intranet website to facilitate senior judge assignment; the reporting of information on senior judge use and performance measurement; and the processing of requests for reimbursement of senior judge payment and expenses.
We hereby direct the State Courts Administrator and the Clerk of the Supreme Court to establish a permanent workgroup consistent with this recommendation.

CONCLUSION
In accepting the Committee's recommendations, we would be remiss if we did not emphasize that senior judges play a vital role in Florida's judicial system. As the Committee pointed out in its report, the availability of senior judges improves the services that Florida courts are able to provide citizens. Parties have better and speedier access to courts, trial calendars are shortened, backlogs are reduced, and interruptions caused by absences due to illness or vacancies in office are avoided because of the continued public service of senior judges. We are confident that the Committee's recommendations will strengthen this valuable resource and improve Florida's judicial system.
On behalf of the citizens of Florida, we express our sincere gratitude to the Committee for its hard work, diligence, and dedication in presenting these recommendations to the Court.
It is so ordered.
ANSTEAD, C.J., WELLS and QUINCE, JJ., and SHAW and HARDING, Senior Justices, concur.
LEWIS, J., concurs in part and dissents in part with an opinion, in which PARIENTE, J., concurs.
*425 LEWIS, J., concurring in part and dissenting in part.
I concur in result only in connection with the majority's approval and adoption of the Report and Recommendations of the Committee on the Appointment and Assignment of Senior Judges and dissent with regard to the majority's total rejection of the heart of this Committee's work which relates to the assignment of senior judges in complex litigation. While this Court spends countless hours and reams of paper attempting to profess its dedication to concepts of modernization, technology and advancement in the judicial branch, in my view, the majority today takes a backward step in apparently rejecting one of the most important recommendations concerning complex litigation. The Court today fails to properly address a problem area that is of extreme concern to every person or entity filing a comment with the Court concerning the senior judge assignment recommendation with the exception of judges themselves.
The comments filed with this Court demonstrate a very real and vast division between those who have taken an oath to administer the judicial system, and those who participate in the system as both litigants and parties. Based upon the comments filed with this Court concerning the Committee's recommendation with regard to complex litigation, it is abundantly clear to me that the majority today fails to properly recognize and accommodate the legitimate concerns of the consumers of the judicial product in favor of the paternalistic approach that "judges just know what is best for both attorneys and parties." The majority adopts this approach even though the Committee we appointed has reasoned otherwise and the comments filed with this Court by attorneys and litigants unanimously support the concept that the use of senior judges in the most complex of litigation matters should not be encouraged.
I must admit that I am somewhat perplexed and confused with the majority's discussion of Recommendation Eleven of the Committee which addresses the use of senior judges in complex cases. First, the majority proceeds to discuss a "per se prohibition on the assignment of senior judges to complex cases" and reasons that such is not warranted. While there are those who believe that such "per se prohibition" is appropriate, the Committee did not recommend or propose such prohibition. Our Committee specifically recognized that "there should not be a per se prohibition against the use of senior judges in complex cases." Thus, in my view, the majority's discussion of such prohibition is not responsive to the recommendation before us today.
Secondly, and in a similar manner, the majority proceeds to discuss and conclude that there should be "no requirement that chief judges be required to show good cause for such assignments." The recommendation before this Court from the Committee appointed to study the issue did not propose a "good cause" requirement for the assignment of senior judges to complex litigation. While there may be those holding such view, such recommendation is not before this Court.
Thirdly, and also in a similar manner, the majority discusses whether there should be a requirement that parties give consent before an assignment of a senior judge to complex litigation may occur. Again, just as with the preceding points, the Committee appointed by this Court did not recommend that the consent of parties constitute a condition precedent for such assignment of senior judges.
Thus, in my view, the predicate which the majority utilizes today to reject Recommendation Eleven is not based upon *426 consideration of the actual recommendation at all, but is based upon other arguments. The majority discusses items that are not part of Recommendation Eleven, but fails to discuss that which comprises the substance of Recommendation Eleven. The majority concludes by stating: "We agree with the Committee's recommendation that, in general, complex cases should be handled by full-time judges." The majority fails to address with precision whether it objects to the "encouragement" of the recommendation or has other views.
In my view, the recommendation of the Committee we appointed is most clear as it proposes:
While there should not be a per se prohibition against the use of senior judges in complex cases, guidelines regarding the assignment of senior judges should provide that, absent agreement by the litigants, Chief Judges are encouraged not to assign senior judges to preside over complex cases.
This recommendation does not contain a "per se prohibition" against the use of senior judges in complex litigation, nor does it contain a requirement that "good cause" be shown as a condition precedent to the assignment of a senior judge in a complex case. What the recommendation does include is the concept that absent agreement of the litigants, "the Chief Judges are encouraged not to assign senior judges to preside over complex cases." If the majority's agreement "in general" that complex cases should be handled only by full-time judges is an agreement with the actual Recommendation Eleven that Chief Judges are encouraged not to assign senior judges in this context, I would agree with the majority. However, if the majority intends to convey and approve something less than that recommended by the Committee on the Appointment of and Assignment of Senior Judges, I dissent.
PARIENTE, J., concurs.

APPENDIX

REPORT AND RECOMMENDATIONS
The Committee on the Appointment and Assignment of Senior Judges (the committee) was formed by the Florida Supreme Court and asked to address a number of issues regarding policies and procedures in the appointment and assignment of senior judges. Before turning to those issues, the committee emphasizes that senior judges are a vital component of Florida's judicial system, providing the citizens of Florida with the equivalent of more than 35 full-time judges.
The availability of senior judges improves the service that Florida courts are able to provide citizens: Parties have better and speedier access to courts, trial calendars are shortened, backlogs are reduced, and interruptions are avoided when active judges are unable to serve because of illness or death. In short, senior judges represent a valuable resource of competent, experienced judges who are willing to continue public service. Such a resource should be valued and carefully cultivated for the benefit of the people of Florida.

I. Background
The Committee on Appointment and Assignment of Senior Judges was established by administrative order of the Chief Justice of the Supreme Court of Florida on June 6, 2001. The committee consisted of three circuit court chief judges, two senior judges, a public defender, a state attorney, and four private practice attorneys, one of whom is a retired judge.

Members:
 Gilbert S. Goshorn, Senior Judge, Gainesville, chair

*427  J. Lewis Hall, Jr., Senior Judge, Tallahassee
 Robert Rouse, Chief Judge, Seventh Judicial Circuit, Daytona Beach
 David Demers, Chief Judge, Sixth Judicial Circuit, St. Petersburg
 Dale Ross, Chief Judge, Seventeenth Judicial Circuit, Ft. Lauderdale
 Rosemary Enright, Public Defender, Sixteenth Judicial Circuit, Key West
 Harry Shorstein, State Attorney, Fourth Judicial Circuit, Jacksonville
 Edward Rodgers, Attorney and Retired Judge, Riviera Beach
 Theodore Babbitt, Attorney at Law, West Palm Beach
 Hector J. Lombana, Attorney at Law, Coral Gables
 W.L. Kirk, Jr., Attorney at Law, Orlando
Committee Staff:
Peggy Horvath, Chief of Strategic Planning
Brian Lynch, Senior Court Operations Consultant
Steve Henley, Court Operations Consultant
Other OSCA Support Staff:
Patty Harris, Court Analyst
Elaine New, Senior Attorney
Laura Rush, Senior Attorney
Kristine Slayden, Senior Court Statistics Consultant
Greg Smith, Senior Attorney
Justice Major B. Harding served as the liaison to the Court for the committee. Tom Hall, Clerk of the Florida Supreme Court, provided valuable input to the committee.
The establishment of this committee followed the Court's consideration of a report from a Senior Judge Workgroup of the Judicial Management Council's Committee on Trial Court Performance and Accountability. That workgroup developed a set of recommendations regarding the utilization, allocation, and management of senior judges.
The committee first met on August 24, 2001, at the Supreme Court Building in Tallahassee. The committee met again on November 27, 2001, in Tampa, and for a final time on January 24, 2002 in Tallahassee. Justice R. Fred Lewis attended the August 24 meeting of the committee; and Justice Harding attended the January 24 meeting. The administrative order establishing the committee directed the committee to submit a report to the Court by February 1, 2002. The Court extended this time frame to mid-February at the request of the committee.
In a June 14, 2001, letter to the committee, Justice Harding articulated its charge. The committee was asked to address the two areas of appointment and assignment of senior judges. The committee would have broad discretion to develop recommendations regarding any aspect of the appointment process. In addition, Justice Harding identified several areas in which policy guidance was sought by the Supreme Court.
The Court desired that the committee first make a recommendation regarding whether there is a need for a formalized certification process for senior judges. If the committee were to conclude that there is not a need for a certification process, then the committee was asked to make recommendations regarding the type of process that should be used to determine the eligibility of senior judges for assignment in the various courts. If the committee were to recommend that a certification process is needed, then the Court requested that the committee make recommendations on the policies and procedures that should be adopted. Justice Harding also *428 set forth some specific questions to be addressed should the committee recommend that a certification process be established:
 What criteria should be used to certify senior judges?
 Should age be a factor in certification?
 Who should review and provide the certification approval or denial?
 What should be the term of the certification?
 Should there be an appeal process for denials of certification? If so, how should it work?
 Should there be a continuing review or evaluation? If so, how should it work?
 Should there be a requirement for continuing education for senior judges?
Regarding the manner in which senior judges are assigned in courts, the Court granted the committee broad discretion to develop recommendations regarding any aspect of the process. The Court was particularly interested in the committee's recommendations regarding the policies and guidelines that should be established to ensure that senior judges are utilized effectively. As with the appointment process, the Court specified a number of questions to be addressed within the committee's recommendations:
 Should the assignment of a senior judge be limited to the level of court that the judge had previously been elected or appointed to (supreme court, district court of appeal, circuit court, county court)?
 Should a senior judge serve only in the jurisdiction where he or she was previously elected or appointed?
 Should the number of days that a senior judge can serve in a year be restricted?
 Should some types of cases or proceedings not be handled by a senior judge?
 Should there be formal guidelines or limitations for the implementation of senior judge service and, if so, what should those be?
In order to formulate their recommendations, the committee reviewed existing policies and practices in Florida and other states, and solicited input from a variety of stakeholders throughout the justice system. Specifically, the committee:
 reviewed the Senior Judges Workgroup Report of the Judicial Management Council's Committee on Trial Court Performance and Accountability;
 studied the current process that is used to certify retired judges and justices as senior judges, and the current process that is used to make senior judge assignments in trial courts;
 studied the current guidelines concerning the utilization of senior judges, and the current manner in which senior judge days are allocated to the circuits;
 studied the utilization of retired judges in other states;
 analyzed legal issues governing the use of senior judges, including public records law, employment law, and advisory ethics opinions;
 solicited the input of a wide range of stakeholders in the senior judge system, including chief judges, senior judges, and government and private attorneys; and
 discussed a wide range of alternative approaches to the appointment and assignment of senior judges.
Consistent with the Senior Judges Workgroup Report and other materials, the committee recognized the great value *429 to the judicial system of the services provided by senior judges. Senior judges in Florida perform the work of approximately 35 full-time judges, at a cost of about $2.9 million, a small fraction of the cost of that number of full-time judges. The committee also recognized that many more remunerative work opportunities are available to retired judges. In light of this finding, the committee recommended that the compensation rate for senior judges be substantially increased.

Recommendation One:
The committee recommends a significant increase in senior judge compensation in order to encourage and recruit the services of qualified retired judges.

II. Authority for the Use of Senior Judges
Article V, section 2(b) of the Florida Constitution establishes the power of the chief justice to assign former justices or judges to temporary duty, a status commonly referred to as that of "senior judge." It also authorizes the chief justice to delegate the authority to assign judges within a circuit to the chief judge of a circuit court:
The chief justice of the supreme court shall ... have the power to assign justices or judges, including consenting retired justices or judges, to temporary duty in any court for which the judge is qualified and to delegate to a chief judge of a judicial circuit the power to assign judges for duty in that circuit.
It is important to note that not all former justices and judges are retired justices or judges, and not all retired justices and judges are senior justices or judges. The terminology can get confusing: a term such as "retired judge" may be appropriate in one context (retirement benefits, for example), but not another (such as recall to judicial service). Further, aside from temporary judicial service or retirement benefits implications, the terms "retired judge" and "senior judge" are also considered honorary designations that are not available to all former judges. For the purposes of assignment to temporary service, the following definitions apply:
"former justice" Any person who has been a judicial officer of this state,
"former judge"
"retired justice" Any former justice or judge who:
"retired judge" a. has not been defeated in seeking reelection to, or has not failed to be
 retained in seeking retention in, his or her last judicial office; and
 b. is not engaged in the practice of law.[7]
 For the purpose of judicial administration, a "retired judge" is defined
 as a judge not engaged in the practice of law who has been a judicial
 officer of this state.[8]
"senior judge" A retired judge serving on assignment to temporary judicial duty may
 be referred to as a "senior judge." This designation is honorary and has
 no effect on the responsibilities or conduct of the retired judge.[9]
III. Eligibility to Serve as a Senior Judge
*430 The committee was asked by the Supreme Court to make a recommendation whether there is a need for a formalized certification process for senior judges, or if not what other process might be instituted to determine the eligibility of senior judges for assignment. The committee agreed there was not a need for a formal certification process; the chief justice would be well served in exercising the authority to assign retired judges and justices to temporary service by the existence of a structured process that would aid in determining the eligibility for assignment of retired justices and judges who would like to serve as senior judges.
The committee concluded that the process of reaching a determination of eligibility should include screening to ensure that the retired judge is current with educational requirements, that judicial leadership within the judge's resident court do not have concerns regarding the judge's present ability to serve, and that the judge has no pending investigations before the Judicial Qualifications Commission. In addition, the committee agreed that, for judges and justices who have been inactive as well as for active senior judges, the determination of eligibility should also take into consideration attorney input regarding the judge's work.
Recommendation Two:
 Potential senior judges should be subject to a process to determine eligibility for
assignment that includes the following components:
  screening to ensure compliance with continuing education requirements;
  employment screening including inquiries to chief and administrative judges with
 whom the candidate has worked;
  inquiry with the Judicial Qualifications Commission regarding whether the retired
 judge is the subject of a pending investigation; and,
  consideration of input about the retired judge's work from attorneys who appear
 before the court.
Additional eligibility criteria were discussed by the committee. The committee considered whether judges who had been defeated in an election or who failed to achieve a majority vote in favor of retention in their last judicial position should be eligible for assignment as a senior judge. The committee observed that, while qualified and competent judges may occasionally fail to win re-election or retention, concerns of public trust and confidence and deference to the constitutional electoral process dictate that the expressed will of the voters should be respected, and a judge or justice who in his or her last judicial position was not re-elected or retained by the voters should not be eligible for senior judge service.

Recommendation Three:
A judge or justice who has been defeated in an election or retention vote in their last judicial position should not be eligible to serve as a senior judge.
The committee agreed that it was not necessary that judges who honorably retire and are otherwise eligible to serve as a senior judge be subject to the attorney feedback feature when they initially apply *431 for assignment as a senior judge. Therefore, the committee recommends that a judge or justice who retires and applies for assignment as a senior judge within one year of retirement should be eligible for assignment without being subject to the feedback process.

Recommendation Four:
A judge who is otherwise qualified to serve as a senior judge, and who applies for assignment as a senior judge within a year of retirement, should be eligible for assignment without review of attorney input. An initial determination of eligibility would therefore be based on education, employment, and Judicial Qualifications Commission screenings, but would not require review of attorney input.
The Supreme Court asked the committee to address the question of whether there should be a requirement for review or evaluation of a senior judge's work. The committee agreed that while the quality of judicial work performed by senior judges in Florida is consistently very high, the chief justice should nonetheless direct that every senior judge be subject to periodic review. Regarding the frequency of such review, the committee deems a three-year cycle to be appropriate. This would allow synchronization with the existing three-year judicial education cycle.
The committee furthermore recognized that one's ability to perform complex tasks invariably diminishes with age, though the rate of decline is different for different individuals. Because of this fact of life, the committee concluded that, consistent with the mandatory retirement provision of the Florida Constitution, those who are constitutionally required to retire should be subject to more frequent review. A two-tiered system is therefore recommended by the committee, dependent on age.

Recommendation Five:
Senior judges who have been determined to be eligibility for assignment who have not reached the constitutionally required age of retirement should be subject to review every three years. Senior judges who have been determined to be eligibility for assignment who have reached the constitutionally required age of retirement should be subject to review annually. Educational requirements, however, should be reviewed only every three years in all cases, consistent with the existing court education cycle.
The committee recommends that the chief justice, in making a determination that a senior judge continues to be eligible for assignment, should consider the three elements of the initial review, and should also consider the recommendation of a committee, or review board, that is based on an assessment of input from attorneys appearing before the court. The rationale in support of such a review rests on the concept of accountability: While sitting judges are elected or appointed through a merit-selection process, senior judges are assigned under the constitutional authority of the chief justice. Further, while full-time judges are subject to removal by the voters through election or retention vote, senior judges are not. For sitting judges, therefore, accountability rests ultimately with the voters.[10] Voters do not, however, *432 have a similar opportunity to retain or remove a senior judge. Accountability for their continued judicial authority rests with the chief justice. The committee therefore recommends that, to provide accountability, the chief justice rely on a structured review process.

Recommendation Six:
Continuing service as a senior judge should require periodic review, based on education, employment, and Judicial Qualifications Commission screening, and on the recommendation of a review board after consideration of input from attorneys who appear before the court.
The Supreme Court asked the committee how a review process could be structured. The committee discussed the potential mechanisms that might be used to solicit input from attorneys about the work of senior judges and who should review this feedback. The committee recommends that a set of committees, or review boards, be created, one in each of the five appellate districts. The review boards would solicit attorney input regarding any senior judge who is scheduled for review, as well as any retired judge from within that appellate district who requests assignment and has been retired for more than a year. A district review board would, upon consideration of attorney input, make a recommendation to the chief justice whether a candidate is eligible or not eligible for assignment. The recommendation of a review board should not be subject to appeal.
The committee recommends district-wide review boards, rather than circuit-wide boards or a single statewide board for several reasons. A district-wide board could have representation that includes those who have first-hand knowledge of judges, as well as those who have experience in other jurisdictions, allowing for a balancing of perspectives. Further, the committee estimates that there would need to be approximately 150 to 200 reviews conducted each year for the foreseeable future. District-wide review boards would therefore conduct approximately 30 to 40 reviews each year, an amount that the committee hopes would not be an onerous burden. Review boards at a circuit level would be required to conduct only a small number of reviews, a number which may not justify the accompanying administrative activity. The committee anticipates that review boards would be able to organize their work on an annual cycle and conduct all reviews in one or possibly two meetings of each board each year.
The committee suggests that the review boards be comprised of the chief judge of each circuit court in the district, or a designee, the chief judge of the district court of appeal or a designee, and an equal number of attorneys. One attorney should be appointed respectively by each circuit chief judge and the district court chief judge. Because each appellate district contains a different number of circuits, ranging from two to six, the memberships of the boards would range from four to twelve.

Recommendation Seven:

The review of senior judges should be conducted by five review boards, with one board created to serve each appellate district. Review boards would solicit attorney input regarding any senior *433 judge who is scheduled for review, as well as any judge from within that appellate district who requests assignment and has been retired for more than a year. The review boards would make a recommendation to the chief justice whether a candidate is eligible or not eligible for assignment. Recommendations of review boards should not subject to appeal.

Because senior judges can and sometimes do serve in multiple jurisdictions, the committee discussed the question of which board should conduct a review of a judge who has served in more than one appellate district. The committee concluded that the review should be conducted by the board in the district in which the judge has performed the most service in the present period of eligibility.
The committee also discussed the criteria the boards should use in reviewing senior judges who seek assignment or re-assignment. Regarding physical and mental health, the committee concluded that the central consideration is ability, and concerns regarding ability would be expressed by attorneys and colleagues in the peer review process. Therefore, physical and mental examinations would not be necessary. In addressing other criteria, the committee refrained from setting out formal standards or guidelines, but would suggest that chief justices, in asking review boards for their recommendations regarding eligibility, might direct that they be guided by the following factors in formulating their recommendations.[11]
 Scholarship: Knowledge and understanding of substantive, procedural and evidentiary law; attentiveness to factual and legal issues before the court; and proper application of judicial precedents and other appropriate sources of authority.
 Communication: Clarity of bench rulings and other oral communications; quality of written opinions with specific focus on clarity and logic, and the ability to explain the facts of a case and the legal precedent at issue; and sensitivity to impact of demeanor and other non-verbal communications.
 Case Management and Productivity: Effective docket management and prompt case disposition including devoting appropriate time to all pending matters and discharging administrative responsibilities diligently.
 Temperament: Ability to deal patiently with and be courteous to all parties and participants; and willingness to permit every person legally interested in a proceeding to be heard, unless precluded by law or rules of court.
 Work Ethic: Punctuality, preparation and attentiveness, and meeting commitments on time and according to the rules of court.
 Good Health: Physical and mental competence required to perform the duties and responsibilities of a judge.
 Integrity: Avoidance of impropriety and appearance of impropriety; freedom from personal bias; ability to decide issues based on the law and the facts without regard to the identity of the parties or counsel, *434 the popularity of the decision, and without concern for or fear of criticism; impartiality of actions; and compliance with the Code of Judicial Conduct.
Under the system contemplated by the committee, review boards would be directed by a chief justice to provide a structured opportunity for input from attorneys who practice within the jurisdiction in which the senior judge has served. The requested input could be in reference to the above criteria or any criteria deemed relevant by that chief justice to the exercise of the assignment power. The opportunity for input could be created through any of several methods, including published invitations to provide comment by letter, the use of a survey instrument, or other mechanisms. To allow variation in response to local legal culture, and to promote innovation and experimentation, the committee suggests that the method of the opportunity to provide input be left to the sound discretion of each review board.
The committee recognizes that the information collected by review boards about senior judges who are eligible for assignment would be of great assistance to chief judges in making assignment decisions. Assuming that the administrative support for the review process would be located at the Supreme Court, the committee recommends that the information collected for the consideration of a review board be forwarded to each circuit and district chief judge.

Recommendation Eight:
The information collected for purposes of review should be made available to circuit and district chief judges prior to the board's recommendation. The information should be sent to the chief judges to aid them in the assignment and management of senior judges, and then forwarded to the relevant board.
The committee directed research into the public record status of materials collected under the eligibility review process. It does not appear that materials collected for the purpose of determining eligibility for assignment as a senior judge would qualify for exemption from the public record requirements of the Florida constitution. The committee discussed that while these records could be made exempt through the creation of a statutory exemption, there is value in public accountability.

IV. Assignment of Senior Judges
The Florida constitution creates the power of the chief justice to assign consenting retired judges and justices to temporary duty, and specifically authorizes the chief justice to delegate to the chief judge of a judicial circuit the power to assign judges within a circuit.[12] Thus, chief judges can assign senior judges under the delegated authority of the chief justice. There was extensive deliberation by the committee regarding appropriate and inappropriate assignments for senior judges. The committee agreed that the issue should be addressed through guidelines to chief judges annually provided by the chief justice. The committee considered each of the questions posed by Justice Harding regarding the assignment of senior judges. The committee recognizes that chief judges, in consultation with administrative judges, are most familiar with the skills of judges and the workload needs of a court. Chief judges should therefore continue to have maximum flexibility in making assignments *435 of senior judges. The follow recommendations are directed to that end.

Recommendation Nine:
Annual guidelines from the chief justice regarding the assignments of senior judges should be consistent with the recommendations in this report.
The Court asked the committee to consider the question of whether a senior judge should be limited to service at the level of court that he or she had been elected or appointed. For example, can a retired county judge serve as a senior judge in circuit court, or a retired circuit judge serve in a district court of appeal? The committee recognized that many active county judges are extensively assigned to preside over circuit court dockets, and many circuit judges are assigned to sit on district court panels.[13] The committee considers that such experience can qualify a judge to serve in a court superior to that which the judge was appointed or elected. The committee therefore concluded that a senior judge should be permitted to serve in a court superior to the court in which the judge had been elected or appointed.

Recommendation Ten:
Senior judges should not be prohibited from serving in a superior court than that in which they were elected or appointed.
A principle area of assignment considered by the committee was complex cases. The committee concluded that, in general, complex cases should be handled by full-time judges who are subject to constitutional mechanisms of accountability. In some cases, particularly where the parties consent, assignment of a senior judge to a complex case is not objectionable.

Recommendation Eleven:
While there should not be a per se prohibition against the use of senior judges in complex cases, guidelines regarding the assignment of senior judges should provide that, absent an agreement by the litigants, chief judges are encouraged not to assign senior judges to preside over complex cases.
Florida Rules of Court do not provide a definition of "complex case." To clarify the concept, the committee reviewed legislation introduced during the 2000 session of the Florida Legislature.[14] That bill defined the following actions as complex cases:
 antitrust claims;
 construction defect claims involving multiple parties;
 shareholder derivative claims;
 environmental or toxic claims involving multiple parties;
 mass tort claims;
 claims involving class actions; and
 insurance coverage claims arising out of any claims listed above.
The committee observed that this itemization is not exhaustive, and suggests that *436 other kinds of cases can be complex, including:
 medical malpractice claims;
 product liability claims;
 environment torts without multiple parties; and,
 aviation actions.
The committee was also asked to address the question of whether the amount of time a senior judge serves within a year should be limited. The committee concluded that it should not. The committee noted that senior judges are compensated at a level far less than can be earned in private practice, and that many senior judges continue to serve out of an abiding commitment to public service. Where there is a demonstrated need for qualified judges, and a senior judge is available, artificial limitations on the extent of service should not prevent workload from being addressed by a senior judge. The state and citizens of Florida benefit from this service.
The constitutional language regarding senior judge service refers to "temporary duty,"[15] and Florida Statutes purport to limit assignments to sixty days service in a year "without approval of the chief justice."[16] In keeping with these provisions, the existing practice has been to issue assignment orders for specified time periods. In the view of the committee, an order of a chief justice assigning a retired judge or justice to service for a period of one year or three years satisfies the statutory requirement and is, furthermore, within the constitutional authority of a chief justice. Repeated re-assignments are not necessary. The committee also suggests that the statutory provision be considered for revision.

Recommendation Twelve:
There should not be a limit on the number of days that a senior judge serves within a calendar year.
The committee was asked to address the question of whether a senior judge should serve only in the jurisdiction where he or she was previously elected or appointed. Upon consideration the committee determined that there is no public policy benefit to limiting assignment to a certain jurisdiction only, such as the jurisdiction of prior service or the jurisdiction of current residence. A senior judge who has been determined to be eligible for assignment should be made available for service statewide. The rationale for this recommendation revolves again around the concept of accountability. Accountability for senior judges rests ultimately with the chief justice rather than the voters of a particular circuit or district. The authority and responsibility of a chief justice extends throughout the state, and a chief justice can assign a senior judge to duty without limitation to the jurisdiction of prior service.

Recommendation Thirteen:
Standard assignment orders to duty that allow for service statewide as a senior judge should be created for issuance by the chief justice.

V. Implementation
The committee discussed at length the implementation of the proposed system of ongoing eligibility review and assignment, *437 and recognizes that such a system would create a substantial and ongoing commitment of resources to maintain. The committee consulted at length with the Clerk of the Supreme Court and staff of the Office of the State Courts Administrator. The committee does not see the necessity for a continuing committee to address policy matters, and understands that, should issues of policy arise, the review boards and the chief judges of the circuit and district courts will raise the issue with the chief justice. Further, the chief justice may at any time create a committee or direct an existing Court committee to study additional issues that may arise.
The committee discussed the desirability of promoting efficiency and effectiveness in the use of senior judges through the creation of an intranet website that would centralize information and facilitate activity. This concept follows the prior work of the Senior Judge Workgroup of the Committee on Trial Court Performance and Accountability, which recommended that a single senior judge management information system be created to replace the existing separate databases associated with senior judge authorization, compensation, and utilization. The Information Systems Division of the Office of the State Courts Administrator has the capability to provide the technical infrastructure for such a website, which would be accessible to the circuit and district courts, the Supreme Court and the Office of the State Courts Administrator, and all senior judges.
The senior judge management information system would provide a registry of eligible senior judges that chief judges, administrative judges and court administrators could consult. The registry would provide information on the availability of senior judges, as well as their areas of substantive expertise and preference, current education information, and locations. Circuit and district courts would directly update information on the registry about senior judge service. The system could also provide automated links to finance and accounting functions that would facilitate requests for reimbursement. The system could be linked to the judicial education system to facilitate continuing education.

Recommendation Fourteen:
The Office of the State Courts Administrator should create and maintain an intranet website to support the efficient and effective assignment and use of senior judges.
To address operational matters and procedures, and to support the chief justice in implementing and maintaining the proposed system, the committee suggests that the chief justice direct that a permanent workgroup be created under the guidance of the State Courts Administrator and the Clerk of the Supreme Court. Such a workgroup should include staff from the Finance and Accounting Division, Personnel Division, Court Services Division, Legal Affairs, Information Systems Division, and Strategic Planning Unit of the Office of the State Courts Administrator, and the Clerk or designated staff of the Clerk of the Supreme Court. The workgroup should also include representation of the trial court administrators. The workgroup should address the following operational matters:
 the procedural steps for applying for senior judge assignment;
 the guidelines and procedural considerations regarding the assignment of senior judges;

*438  the development and application of an intranet website to facilitate senior judge assignment;
 the reporting of information on senior judge utilization and performance measurement; and,
 the process of requests for reimbursement of senior judges payment and expenses.

Recommendation Fifteen:
A permanent workgroup should be created under the State Courts Administrator and the Clerk of the Supreme Court to address ongoing operational matters and procedures and to support the chief justice in implementing and maintaining the proposed system for the assignment and support of senior judges.
NOTES
[1] The Committee, chaired by Senior Judge Gilbert S. Goshorn (Gainesville), consists of three circuit court chief judges, two senior judges, a public defender, a state attorney, and four private practice attorneys, one of whom is a retired judge. Committee members include: Senior Judge J. Lewis Hall, Jr. (Tallahassee); Chief Judge Robert Rouse, Seventh Judicial Circuit (Daytona Beach); Chief Judge David Demers, Sixth Judicial Circuit (St. Petersburg); Chief Judge Dale Ross, Seventeenth Judicial Circuit (Ft. Lauderdale); Public Defender Rosemary Enright, Sixteenth Judicial Circuit (Key West); State Attorney Harry Shorstein, Fourth Judicial Circuit (Jacksonville); Attorney and Retired Judge Edward Rodgers (Riviera Beach); Attorney Theodore Babbitt (West Palm Beach); Attorney Hector J. Lombana (Coral Gables); and Attorney W.L. Kirk, Jr. (Orlando).
[2] See art. V, § 8, Fla. Const. ("No justice or judge shall serve after attaining the age of seventy years except upon temporary assignment or to complete a term, one-half of which has been served.").
[3] See art. V, § 10, Fla. Const.
[4] The Committee drew upon the experience of several other states, particularly New York and Utah, in developing these criteria.
[5] While none of the Florida rules of court procedure define "complex cases," we agree with the Committee that the following, though not an exhaustive list, are examples of complex litigation: antitrust claims, construction defect claims involving multiple parties, shareholder derivative claims, environmental tort claims, mass tort claims, claims involving class actions, product liability claims, medical malpractice claims, aviation actions, and insurance coverage claims arising from any of these claims.
[6] Art. V, § 2(b), Fla. Const. Florida statutory law purports to limit assignments to sixty days of service in a year "without approval of the chief justice." § 25.073(2), Fla. Stat. (2001). In light of our endorsement of recommendation twelve, we suggest that the Legislature consider revising this statutory provision.
[7] Section 25.073(1), Florida Statutes.
[8] Rule 2.030(a)(3)(B), Florida Rules of Judicial Administration.
[9] Rule 2.030(a)(3)(D), Florida Rules of Judicial Administration.
[10] Other mechanisms to remove judges include impeachment by the Legislature and removal by the Supreme Court, which may be of limited application in the context of senior judges.
[11] The committee drew upon the experience of several other states, particularly New York and Utah, in developing these criteria.
[12] Art. V., sec. 2(b), Fla. Const.
[13] The same provision of the constitution that allows for the assignment of retired judges allows for the assignment of active judges to temporary duty "in any court for which the judge is qualified." Art. V., sec. 2(b), Fla. Const.
[14] Senate Bill 934, 2000 Legislative Session.
[15] Art. V., sec. 2(b), Fla. Const.
[16] 25.073(2)(a), F.S.