SHAW, Chief Justice.
Under the provisions of article V, section 9 of the Florida Constitution, the Florida Supreme Court is responsible for determining the need for an increase or decrease in the number of judges required to consider and dispose of cases filed before the respective courts. To this end, we have analyzed case filings and evaluated the growth in the workload of the state courts system over the past several years, in light of additional judgeships which have been authorized each year by the Florida Legislature.
As the result of this review, we are certifying the need for two district court of appeal judges, eight circuit court judges, and twelve county court judges. A comparison of the requests for new judges filed by the respective courts and the new judgeships certified as needed for fiscal year 1991-92 follows:
*1304 REQUESTS / SUPREME COURT CERTIFICATION
[[Image here]]
*1305 Florida Rule of Judicial Administration 2.035(b)(2) sets forth the criteria for certification of need for additional judges in the district courts of appeal. The Court received a request for two additional judge-ships from the First District Court of Appeal. In evaluating this request, we gave the greatest weight to data on the past and projected filings in that court and the composition of its caseload.
The First District Court of Appeal has exclusive jurisdiction to hear workers’ compensation appeals and handles a disproportionate share of appeals of administrative rulings. These two classes of cases are usually more demanding in terms of judicial time and effort than general civil and criminal appeals. Thus, they must be given greater weight in the assessment of that court’s workload and need for new judge-ships. Moreover, the volume of general civil and criminal appeals for the First District Court of Appeal has increased at a steady rate over the past three years. The last judgeship authorized for the First District Court of Appeal was in January 1989 and was not effective until 1990. Since 1989, the workload for that court has increased by approximately 600 filings. It is projected that by the end of 1991, total filings for that court will have increased by 642 cases. This increase, coupled with the demands of workers’ compensation and administrative appeals, is sufficient to justify two additional judgeships for the First District Court of Appeal.
Florida Rule of Judicial Administration 2.035(b)(1) sets forth the criteria for certification of need for judges at the trial court level. As with certifications of recent years, we have placed the greatest weight on statistical data reflecting the growth and composition of caseloads filed in the various circuits and counties. We have determined that the most consistent and reliable factor at the circuit court level is total case filings per judge. Criminal, civil, probate, domestic relations, guardianship, and juvenile case filings for each circuit are also evaluated by applying different weights reflecting the differential requirements for judicial hearing time and attention. The filings per judge statistics for the county courts are adjusted to exclude worthless check offenses and criminal and civil traffic infractions (except for DUI). In addition to those factors prescribed in Florida Rule of Judicial Administration 2.035, other factors considered include the use of county and retired judges on temporary assignment; the availability of supplemental hearing resources furnished by the counties (traffic magistrates, child support hearing officers, commissioners, and general or special masters); reliance on mediation and arbitration to resolve cases; and special local circumstances that affect case handling.
The need for additional judgeships at the circuit court level is more limited than in recent years. This may be due, in part, to the authorization and funding of twenty-two new circuit judgeships by the 1990 Legislature, which became effective January 1, 1991. Our data also shows that the rate of increase in filings in the circuit courts, which had been quite dramatic in recent years, has slowed. This is largely due to lower filing rates in the criminal divisions in many circuits.
Still, we find compelling justification for eight new circuit judgeships. All of the courts for which new circuit judgeships are requested are projected to have 1991 filings levels above the 1,865 filings-per-judge threshold, at which this Court has determined there is substantial need for more judicial resources. Other factors such as geographical constraints affecting judicial assignments, reliance on retired judges on temporary assignment, and historical assignments of county judges to hear circuit court matters weighed heavily in our decisions for selected circuits.
These judgeships are critical to the ability of the circuit courts to keep up with caseloads. Each year the courts are surveyed to determine how long litigants and *1306 attorneys must wait before their cases may be heard before a judge. The survey completed this year indicates that the wait to have routine motions heard is often as much as two to three months. Civil cases that are trial ready cannot be placed on a trial docket earlier than nine to twelve months in most circuits. Data gathered by the Office of the State Courts Administrator indicates that disposition rates have leveled off in recent years, which suggests Florida judges are working at or near capacity. Pending case inventories, too, have increased. The eight judgeships we find to be needed will not enable a reversal of these trends, but they are crucial to our ability to avoid greater delays than are currently the norm in many circuits.
As reported last year, county court caseloads began a relatively sharp increase in 1988, when 760,569 cases were filed. That trend has continued through 1990, when 807,264 cases were filed for a statewide increase of 46,695 cases or 6 percent. The more populous counties and counties which experience large seasonal changes in population were hardest hit by the increases. We are certifying the need for twelve new county court judgeships, the vast majority of which are for such counties.
In evaluating the need for such positions, we relied principally on filings data that was adjusted to include only criminal, civil, and DUI cases. Worthless check cases, non-DUI criminal traffic, and civil traffic infractions were excluded because of their limited requirements for judicial time, the diversion of large numbers of worthless check cases in selected circuits, and the variability and volume of such cases reported from county to county. We used a range of 3,700 to 3,800 adjusted filings per judge as the threshold at which there is a presumptive need for additional judicial positions. County courts with caseloads near or exceeding that level were judged to be operating at or above capacity. County judges in such courts were found to have relatively little time to assist with case assignments at the circuit court level. Where the judges in these counties did help with the circuit court workload, it was to the detriment of case processing in the county courts. All but one of the counties for which certification of need is made are projected to have between 3,709 and 4,776 adjusted filings per judge in 1991.
The one county for which we recommended a new judgeship, and for which we projected fewer than 3,700 adjusted filings per judge, was Brevard County. However, it had one of the highest levels of traffic filings in the state. Also, Brevard County maintains three widely separated court facilities, which makes the sharing of judicial resources difficult.
In making the certification for county court judges, the Court considered the possible impact of the change in county court jurisdiction that was effective October 1, 1990. Only three months of data on case filings since the change are available and the data are inconclusive. While the jurisdictional change may not have a dramatic effect on the workload of individual judges, we expect there will be some marginal increase in case assignments.
We also considered the possible impact of implementation of the 1988 amendment to the Florida Constitution authorizing the establishment of civil traffic infraction hearing officers. Implementing legislation was passed in 1989, but only the Eleventh Judicial Circuit in Dade County and the Thirteenth Judicial Circuit in Hillsborough County are participating in a pilot program to employ traffic magistrates. County court caseloads in these counties are in the range where additional judgeships would likely be requested, but only Hillsborough County made a request this year. Hillsbor-ough County’s use of traffic magistrates was relatively limited and has been estimated to save the equivalent of only approximately three-tenths of a judgeship.
Florida trial courts have continued to address workload pressures by relying heavily on the temporary assignment of retired judges. A total of 3,609 days of service were provided by retired judges in fiscal year 1989-90. This is the equivalent of approximately fifteen judge years. We expect demand for retired judge service to continue to grow. Yet, budget cutbacks *1307 have forced a curtailment in the assignment of retired judges in the current budget year. The use of retired judges is the most cost effective and flexible program we have to address calendaring problems and emergencies as they arise. The Court is seeking restoration of the funds that were cut and full funding of its fiscal year 1991-92 budget request for approximately 4,800 days of retired judge service. This is viewed as a critical companion measure of the judicial certification.
Full funding for the requests certified as needed herein is deemed absolutely essential if Florida’s courts are to fulfill their constitutional duties to try cases in a fair, impartial, and timely manner.
It is so ordered.
oyerton, McDonald, barkett, GRIMES, KOGAN and HARDING, JJ., concur.