GRIMES, Chief Justice.
Under the provisions of article Y, section 9 of the Florida Constitution, the Florida Supreme Court is responsible for determining the need for additional judges, or the necessity for decreasing the number of judges required to consider cases filed before the respective courts. Because of our appreciation of the fiscal ramifications, we have adopted a policy of only certifying the need for a new judge when we are confident that such a need exists. To this end, we have analyzed the cases filed and evaluated the growth in the workload of the State Courts System over the past several years.
As a result of this careful review, we certify the need for five additional circuit judges, four additional county judges, and no additional appellate judges. This year’s certification is substantially lower than those we have made in recent years. A comparison of the requests for new judges filed by the respective trial courts and the new judges certified as needed for fiscal year 1996-97 follows:
Circuit Court County Court
Circuit Request Certified County Request Certified
Fourth Duval
Seventh Putnam
Eighth 1
Ninth 1 Orange
Tenth 1
Eleventh 4 Dade
Twelfth 1
Thirteenth 1
Fifteenth Palm Beach
Seventeenth 1 Broward
Eighteenth 1
Twentieth 1
Totals 12 Totals
The criteria for certification of the need for additional judges in the district courts of appeal are set forth in rule 2.036(b)(2), Florida Rules of Judicial Administration. The Court did not receive requests for additional judges from any of these courts, despite the fact that Florida’s intermediate appellate courts all are forecast to exceed the established threshold of 250 appellate filings per judge in 1996. The forecasts for 1996 suggest the workload of the district courts will range from a low of 296 filings per judge in the Third District Court of Appeal to a high of 402 filings per judge in the Fourth District Court of Appeal.
The district courts have each addressed workload pressures through various means. They have improved internal operating procedures, established central legal research staff, and assigned senior judges to hear appeals on a temporary basis. The First District Court of Appeal has developed an appellate pre-briefing conference program combining both mediation and case management, as well as a specialized division to handle workers compensation eases. We continue to encourage these courts to develop alternative and creative means to efficiently and fairly hear the cases brought before them. Based upon the lack of requests, we do not certify any additional judicial positions for the district courts of appeal, but request that the Legislature favorably review re *1038 quests for alternative resources to address workload increases during the annual appropriations process.
The criteria for certification of the need for judges in the trial courts are set forth in rule 2.035(b)(1), Florida Rules of Judicial Administration, as amended December 21, 1995. Consistent with previous practice, we have placed the greatest weight on statistical data reflecting the growth and composition of caseloads in the various circuits and counties. We have determined that the most consistent and reliable measure of workload at the trial court level is total case filings per judge.
In addition to case filings per judge, the other factors described in rule 2.035, Florida Rules of Judicial Administration, were considered. These other criteria included county judge service on the circuit bench, the availability and use of supplemental hearing officers, the use of alternative dispute resolution, the number of jury trials, the number of foreign language interpretations, the geographic size of a circuit, special law enforcement activities, the availability and use of case-related support staff and ease management policies and practices, the nature and complexity of cases, and caseload trends. This information was extremely useful in evaluating the requests of the various circuit courts.
We find it necessary to certify five new circuit judges for fiscal year 1996-97. These five additional circuit judges include one additional circuit judge each for the Eighth, Tenth, Twelfth, Thirteenth, and Twentieth Judicial Circuits.
While the circuit courts experienced a slight decrease in filings from 1991 through 1993, the years 1994 and 1995 yielded upward trends in almost every category of case. Juvenile, criminal, and domestic relations case filings continued to increase in 1994 and 1995 faster than other categories, with continued growth forecast well into 1996. The most significant growth continues to be in domestic and repeat violence case filings. This category of cases has increased 452% since 1986.
In addition to the growth in the number of filings in the juvenile, probate, and domestic violence categories, the cases in these categories, as well as others, are more labor intensive than in previous years. Changes in the statute, case law and court procedures in recent years have necessitated more hearings for various types of cases, mandated priority handling for certain matters, and required judges to render written findings of fact and conclusions of law. The collective effect of these changes is that cases are more involved and labor intensive than when the 1,865 filings per judge threshold was adopted in 1986. Often these changes cannot be measured in terms of a need for judicial positions in a particular jurisdiction, but instead serve to gradually increase workload across the board. In the past, when a court had or was projected to have 1,865 circuit filings per judge, this Court determined there was a presumptive need for additional judicial resources. Courts at this level of filings are deemed to be working above capacity. Thus, we have been compelled to give careful consideration to the necessity for additional judgeships not only for courts near or above the threshold, but also for courts that are marginally below the standard as well.
Four of the five courts for which we are certifying a need for an additional judge are forecast to be at or in excess of the 1865 filing per judge threshold. We also certify the need for an additional judge for the Thirteenth Judicial Circuit, which is expected to have a 1996 workload below the threshold. This circuit had the highest jury trial rates in the state in 1994, and this trend is expected to continue in 1995. It also has a relatively large and increasing number of foreign language translations, which slow court proceedings.
The Court also gave the request of the Eleventh Judicial Circuit a close review because of the number of judges requested and the unusual pressures in the criminal divisions of that circuit which we addressed last year. In 1995, the court recommended and the legislature authorized additional resources for the Eleventh Judicial Circuit including: two additional circuit judgeships; one county judgeship; and a strike force involving significant additional senior judge days and several support staff to improve *1039 case management. It is our understanding that the Eleventh Judicial Circuit has not been able to fully engage the resources of the strike force. The principal obstacle is the lack of available courtrooms. Judicial leadership and court staff are working hard to address space limitations so they can take full advantage of such resources. Accordingly, we are deferring consideration of the need for additional circuit judges until the effects of the senior judge support in the criminal divisions can be evaluated. We have asked the legislature to continue the availability of these resources for fiscal year 1996-97.
As in circuit court, the 1994 caseloads in the county courts increased, reversing a four-year downward trend. This is largely attributable to growth in criminal and civil filings. Criminal traffic filings were also up slightly.
In evaluating the need for additional county judges, we relied principally on case filings data that were adjusted to include only criminal, civil, DUI, and other criminal traffic cases. As in the past, worthless check eases and civil traffic infractions were weighted less heavily because of their limited requirements for judicial time, the diversion of large numbers of worthless cheek cases in selected circuits, and the variability and volume of such cases reported from county to county. County courts with caseload forecasts near or exceeding 6,114 filings per judge are presumed to be operating at or above capacity. All of the counties for which a certification of need is made are projected to exceed the 6,114 threshold and requested additional county judges. We find it necessary to certify four new county judges for fiscal year 1996-97. These four additional county judges include one additional county judge each for Duval and Broward Counties, and two additional county judges for Dade County-
It is clear to this Court that adding judges alone will not ensure increased efficiency in the Florida State Courts System. This conclusion is supported by our evaluation of judicial workload in the twenty judicial circuits and the continued progress of our family court initiative. Judges cannot efficiently and effectively manage caseloads without the benefit of adequate, trained support staff. The availability of law clerks, case managers, office automation, and other resources are essential to the ability of Florida’s courts to effectively address caseload pressures on a continuing basis. We urge the Florida Legislature to fund the Judicial Branch budget requests for such resources. We also emphasize the importance of continued funding for the use of retired judges. These judges play an important role and their services are available at much less expense than full-time judges.
Full funding of the requests certified in this opinion is absolutely essential if Florida’s courts are to fulfill their constitutional mandate to try eases in a fair, impartial, and timely manner. Moreover, the Florida Legislature is encouraged to authorize the judge-ships certified as necessary herein, effective October 1,1996.
It is so ordered.
OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.