846 So.2d 1129 (2003)
PHYSICIANS HEALTHCARE PLANS, INC., et al., Petitioners,
v.
Raymond PFEIFLER, et ux., Respondents.
Kurshid Kahn, M.D., et al., Petitioners,
v.
Raymond Pfeifler, et ux., Respondents.
Nos. SC01-2062, SC01-2079.
Supreme Court of Florida.
May 1, 2003.
*1131 Louise H. McMurray and Douglas M. McIntosh of McIntosh, Sawran, Peltz & Cartaya, Miami, FL, on behalf of Physicians Healthcare Plans, Inc.; F. Bryant Blevins of Marlow, Connell, Valerius, Abrams, Adler & Newman, Miami, FL, on behalf of Ronald S. Gup, M.A., etc.; Kevin P. O'Connor of O'Connor, Chimpoulis, Restani, Marreo & McAllister, P.A., Coral Gables, FL, on behalf of Ralph Greenwasser, Jr., D.O.; and Nancy W. Gregoire and Michael J. Rotundo of Bunnell, Woulfe, Kirschbaum, Keller, McIntyre & Gregoire, P.A., Fort Lauderdale, FL, on behalf of Khurshid Khan, M.D., et al., Petitioners.
Gary M. Farmer, Jr. of Gillespie, Goldman, Kronengold & Farmer, P.A., Fort *1132 Lauderdale, FL; Charles J. Crist, Jr., Attorney General, and Charles M. Fahlbusch, Assistant Attorney General, Fort Lauderdale, FL; and Michael S. Freedland of The Law Offices of Freedland & Glassman, Weston, FL, for Respondents.
PER CURIAM.
Physicians Healthcare Plans, Inc., Dr. Kurshid Kahn, and others petition this Court for a writ of prohibition. We have jurisdiction. See art. V, § 3(b)(7), Fla. Const.
The instant case arose from a 1998 medical malpractice action by Raymond and Cynthia Pfeifler against Physicians Healthcare Plans, Inc. (Physicians), Dr. Kurshid Kahn (Kahn), and others, which was set for trial on the senior judges' docket in the Seventeenth Judicial Circuit. In July 2000, the codefendants filed a motion in circuit court to return the case to the elected circuit judge, arguing that the assignment to a senior judge violated both this Court's general guidelines and procedures for the assignment of senior judges and the Florida Constitution. The circuit court heard argument in November 2000, denied the motion, but certified the issue as being of great public importance and invited the codefendants to seek a writ of prohibition to resolve the issues presented.
Petitioners Physicians and Kahn have filed two separate petitions for writs of prohibition with this Court. Both petitions raise a number of challenges to the senior judges' docket in the Seventeenth Judicial Circuit and ask this Court to prohibit the assignment of senior judges to preside over "long trial" medical malpractice and other "complex litigation" cases.[1] We have consolidated the cases as they present the same issues for the Court's resolution.
Before considering the challenges raised in the petitions, we find it necessary to explain the background relating to the assignment of senior judges. For the purposes of judicial administration, a "retired judge" is defined as a judge not engaged in the practice of law who has been a judicial officer of this state. See Fla. R. Jud. Admin. 2.030(a)(3)(B). Section 25.073(1), Florida Statutes (2001), also specifies that a retired judge may not have been defeated in seeking reelection or retention to his or her last judicial office. In 1990, Florida Rule of Judicial Administration 2.030(a)(3) was amended to provide that a retired judge serving on assignment to temporary judicial duty may be referred to by the honorary designation "senior judge." This designation had no effect on the responsibilities or conduct of the retired judge. See In re Amendment to Rules of Judicial Admin., 560 So.2d 786, 787 (Fla.1990).
*1133 This Court has exclusive jurisdiction to review judicial assignments based upon article V, section 2(a)-(b) of the Florida Constitution. Article V, section 2(a) gives this Court authority to adopt rules for the administrative supervision of all courts. Article V, section 2(b) gives the chief justice of this Court, as the chief administrative officer of the judicial system, "the power to assign justices or judges, including consenting retired justices or judges, to temporary duty in any court for which the judge is qualified and to delegate to a chief judge of a judicial circuit the power to assign judges for duty in that circuit." Florida Rule of Judicial Administration 2.050(b)(4) delegates the chief justice's assignment power to the chief judges of the judicial circuits to "assign any judge to temporary service for which the judge is qualified in any court in the same circuit." "When a chief judge exercises this delegated assignment authority, the judge is acting under the Chief Justice's constitutional power to make temporary judicial assignments to ensure the speedy, efficient, and proper administration of justice within the various circuits." Wild v. Dozier, 672 So.2d 16, 18 (Fla.1996). Because of the vital role temporary judicial assignments play in the administration of our court system, this Court must have exclusive jurisdiction to review such assignments under its article V, section 2(a) authority to oversee the administrative supervision of all courts. See id.
This Court has long recognized the necessity of assigning retired judges and justices to judicial service in Florida courts. See In re Assignments of Justices & Judges, 222 So.2d 22 (Fla.1969). As we have explained, "unless retired justices and judges are assigned to ... other courts, long delays in the discharge of case loads of some of the trial courts will result." Id. at 23. Thus, retired judges have provided valuable service to Florida's judicial system for many years by assisting with increased caseloads and providing relief to active judges when they are ill or disqualified. See In re Rules Governing Assignment to Duty of Retired Justices & Judges, 239 So.2d 254 (Fla.1970). "Were it not for the availability of this resource, the delays in scheduling hearings and trials... would be much greater." In re Certification of Judicial Manpower, 592 So.2d 241, 246 (Fla.1992). Furthermore, "[t]he use of retired judges is the most cost effective and flexible program we have to address calendaring problems and emergencies as they arise." In re Certification of Judicial Manpower, 576 So.2d 1303, 1307 (Fla.1991). We have repeatedly noted that the services of retired judges "are available at much less expense than full-time judges." In re Certification of Need for Additional Judges, 669 So.2d 1037, 1039 (Fla.1996). Senior judges currently perform the work of approximately thirty-five full-time judges, at a cost of about $2.9 million, a small fraction of the cost of that number of full-time judges. See Comm. On Appointment and Assignment of Senior Judges, Report and Recommendations of the Committee On Appointment and Assignment of Senior Judges, 4 (Feb. 22, 2002) (on file with Clerk, Fla. Sup. Ct.).
It is against this background that we address the petitioners' challenges to the assignment of senior judges. The petitioners claim that the use of senior judges violates the suffrage rights of voters; the assignment of cases to the senior judges' docket in the Seventeenth Judicial Circuit constitutes an improper permanent assignment and violates the constitutional prohibition against the creation of special court divisions; the assignment of a retired judge who resides in another judicial circuit violates the constitutional judicial *1134 qualifications; the assignment of complex cases to the senior judge docket results in delay which constitutes an unconstitutional restraint on access to courts; judges younger than seventy years of age and those who are not eligible for retirement benefits under the state retirement system do not meet the constitutional definition of a retired judge; and senior judges may not be appointed for matters of convenience.[2]
The petitioners argue that the use of senior judges violates their suffrage rights. See Art. V, § 10(b) Fla. Const. (providing for election of circuit court and county court judges unless a majority of the voters in the jurisdiction approve a local option to select judges by merit selection and retention); id. § 11(b) (providing that when a vacancy occurs on a circuit or county court where the judges are elected by the voters the governor shall appoint a judge to fill the vacancy but an election shall be held to fill the judicial office at the end of the appointed term). The petitioners contend that voters are being deprived of the right to have their cases tried by judges who are accountable to the public because senior judges are not elected to judicial office. However, constitutional provisions must be read in pari materia "to form [a] congruous whole so as not to render any language superfluous." Department of Envtl. Prot. v. Millender, 666 So.2d 882, 886 (Fla.1996). The Florida Constitution specifically grants the chief justice power to assign retired justices or judges to temporary duty in any court for which they are qualified and the authority to delegate this power to the chief judge of a judicial circuit. See art. V, § 2(b), Fla. Const. Thus, where appointments fall within the parameters outlined in this provision, the Florida Constitution obviously permits appointment of nonelected judges and does not consider this to be a violation of suffrage rights.
Next the petitioners contend that the use of senior judges in the Seventeenth Judicial Circuit constitutes an improper permanent assignment, which violates the chief justice's constitutional authority to assign retired judges to "temporary duty." Art. V, § 2(b). Based upon our previous cases, we can glean some basic constitutional parameters relating to the temporal nature of judicial assignments. A county judge cannot be assigned to perform solely circuit court work, and vice versa, unless the assignment is for a relatively short time. See Payret v. Adams, 500 So.2d 136 (Fla.1986); Crusoe v. Rowls, 472 So.2d 1163 (Fla.1985). However, a judge may be assigned to hear other court work on a temporary, regular basis as long as the assignment is directed to a specified class of cases, is used to maximize the efficient administration of justice, and supplements and assists the judges in the other court rather than replaces them. See Holsman v. Cohen, 667 So.2d 769 (Fla.1996); Wild; Crusoe.
In determining whether a judicial assignment is a temporary assignment under Florida Rule of Judicial Administration 2.050(b)(4), this Court considers more than the duration of the individual assignment. The successive nature of the assignment, the type of case covered by the assignment, and the practical effect of the assignment on the court's jurisdiction over a particular type of case also must be considered. See Wild. At one end of the *1135 spectrum, this Court has concluded that successive assignments totaling more than two years may be considered temporary where the class of cases covered by the assignment is limited and the practical effect is to assist the judges rather than usurp the court's jurisdiction over a particular type of case. See Crusoe. However, successive and repetitive assignments which might be valid if considered individually are not temporary where the practical effect is to create a de facto permanent circuit judge by administrative order. See Payret.
The petitioners have not challenged specific successive senior judge assignments, but instead make a blanket claim that the senior judge docket in the Seventeenth Judicial Circuit is not a temporary assignment. However, even assuming that some of the senior judge assignments have been successive, this Court has approved other successive judicial assignments. See Wild (approving successive six-month assignments spanning four years of county judge to preside in circuit court over half of all felony cases in a county); Rivkind v. Patterson, 672 So.2d 819, 820-21 (Fla.1996) (approving successive monthly assignments spanning several years as "a logical and lawful means to ensure the expeditious and efficient resolution of domestic violence issues in the Eleventh Circuit"); J.G. v. Holtzendorf, 669 So.2d 1043 (Fla.1996)(approving successive six-month assignments of county judge to hear most, though not all, of the juvenile cases in the county and a few other circuit court actions over the course of five years); Holsman (approving successive monthly assignments spanning several years of circuit court judge to handle a limited number of county court domestic violence misdemeanors in special domestic violence court); but see Payret (disapproving successive one-year assignments of county court judge assigned to hear all circuit court matters in special jury district of Fifteenth Judicial Circuit over five years).
Under Wild, however, the successive nature of the assignment is only one of three factors to be considered in determining whether an assignment is temporary. The type of case covered by the assignment and the practical effect of the assignment on circuit court jurisdiction over a particular type of case must also be considered. See Wild, 672 So.2d at 19. In the instant case, there is a factual dispute over the type of cases handled by the senior judge docket. The petitioners contend that the senior judge docket handles only complex, long-duration cases. The respondents counter that the records of the senior judge docket show that a wide range of circuit court cases and matters are being handled by senior judges. In fact, the circuit court's assignment records indicate that cases are assigned to senior judges primarily because of overcrowded and backlogged calendars in both the civil and criminal court dockets or because the case is likely to be one of long duration. The docket records of the elected judges also indicate that not all long-duration trials are transferred to the senior judge docket. Senior judge utilization statistics reflect senior judge assignments in each division of the Seventeenth Judicial Circuit, and far more in the criminal division than in any other. Further, as noted in the procedures for assignment of senior judges issued by this Court and the forms for senior judge assignments, we conclude that the senior judge assignments in the Seventeenth Judicial Circuit are compatible with the instructions and the guidance of this Court.
As to the final Wild factor of the practical effect of the assignment on circuit court jurisdiction, the senior judge assignments here are used to maximize the efficient administration of justice and have *1136 the practical effect of supplementing and assisting the circuit court judges rather than usurping the judges' jurisdiction over a particular type of case. Under these criteria, we conclude the senior judge assignments are temporary and thus do not violate the constitutional parameters of article V, section 2(b).
Unlike the judicial assignment cases cited above, the petitioners here challenge more than the temporal nature of the senior judge assignments. The petitioners also contend that the senior judge docket is a de facto complex case division which cannot be established by administrative order, but must be established through a local rule which is approved by this Court.[3] The petitioners note that the administrative judge who handles requests for transfer to the senior judge docket in the Seventeenth Judicial Circuit has described the docket as "our complex litigation division," handling "cases that take more than three weeks to try."
Pursuant to Florida Rule of Judicial Administration 2.050(b), chief judges of the circuit courts issue administrative orders to coordinate administrative matters within their jurisdiction. Unlike local rules, administrative orders generally do not have to be approved by this Court. As explained in In re Report of Commission on Family Courts, 646 So.2d 178, 181 (Fla. 1994), divisions of Florida courts are to be established through local rules approved by this Court. See also art. V, § 7, Fla. Const.; § 43.30, Fla. Stat. (2001). Under the provisions of rule 2.050, local rules must be approved by a majority of the judges in a circuit, must be noticed and advertised, and must be approved by this Court.
Thus, if the senior judge docket is deemed a "division" it would need to be created by local rule and approved by this Court. However, this Court has approved the creation of a drug "division" of the criminal court created by administrative order in the Thirteenth Judicial Circuit. See Mann v. Chief Judge of the Thirteenth Judicial Circuit, 696 So.2d 1184 (Fla. 1997). As this Court explained, despite its characterization as a division, the drug court was "more properly viewed as a specialized section or subdivision of the criminal division of the circuit court." Id. at 1185. In Mann, we cited our previous opinion in Administrative Order Fourth Judicial Circuit (Division of Courts), 378 So.2d 286, 286 (Fla.1979), for the proposition that the Florida Constitution "only requires the establishment of subject matter divisions, i.e., criminal, civil, juvenile, probate, and traffic." Accordingly, we concluded that the drug court division at issue in Mann was properly created by administrative order. 696 So.2d at 1185. We further noted that it would place "too great a burden upon the efficient administration of justice ... [t]o require every specialized section of the major subject-matter divisions of a court to be approved by local rule." Id.
In light of our reasoning in Mann and the senior judge utilization statistics for the circuit, we conclude that the use of senior judges to relieve overcrowding of the civil and criminal dockets in the Seventeenth Judicial Circuit does not constitute a complex case division that requires approval *1137 by local rule. Thus, the senior judge assignments are proper via administrative order of the chief judge.
Next the petitioners argue that the assignment of a retired judge who resides in a different judicial circuit violates the constitutional eligibility requirements of article V, section 8 of the Florida Constitution. This section provides in pertinent part that "[n]o person shall be eligible for office of justice or judge of any court unless the person is an elector of the state and resides in the territorial jurisdiction of the court." Despite this seeming constitutional restriction, this Court has ruled that a circuit judge may be assigned temporarily to serve in a circuit other than the one in which he or she was elected. See Card v. State, 497 So.2d 1169 (Fla. 1986); see also Judges of Polk County Court v. Ernst, 615 So.2d 276 (Fla. 2d DCA 1993) (concluding that a county judge may be temporarily assigned to serve outside the county where elected). Based upon these cases, we find no impediment to a similar temporary assignment of a senior judge. Further, as we explained in In re Report & Recommendations of the Committee on Appointment & Assignment of Senior Judges, 847 So.2d 415, 2003 WL 1987980 (Fla. May 1, 2003), "the accountability for senior judges rests with the chief justice rather than the voters of a particular circuit or district. Because the chief justice's authority and responsibility extend throughout the state, the chief justice can assign a senior judge to duty without limitation to the jurisdiction of the senior judge's prior service." op. at 423. Thus, we find no merit to this challenge.
The petitioners argue that the assignment of complex cases to the senior judge docket results in delay which constitutes an unconstitutional restraint on access to courts. See art. I, § 21, Fla. Const. ("The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial, or delay."). However, most of the petitioners' delay arguments seem to be addressed to the crowded civil docket and the resulting delay of civil litigation in general. The petitioners have made no convincing arguments that these cases would be resolved any more quickly if they remained on the regular civil docket. Statistics indicate that the Seventeenth Judicial Circuit is very efficient in its management and administration of judges and the conduct of its jury trials. It is counterintuitive to assume judicial efficiency would improve if we reduced the number of judges handling cases in the circuit by eliminating the use of senior judges. As noted above, senior judges currently perform the work of approximately thirty-five full-time judges statewide. Our judicial system would be severely hamstrung without these services. See, e.g., In re Certification of Judicial Manpower, 592 So.2d 241, 246 (Fla.1992) ("Florida trial courts have continued to address workload pressures by relying heavily on the temporary assignment of senior judges."). We would all like to see cases disposed of expeditiously. However, limited judicial resources and burgeoning court dockets require that the chief judges retain the freedom to manage the resources for "the efficient and proper administration of all courts within [the] circuit." Fla. R. Jud. Admin. 2.050(b)(3). "[A]s the administrative officer of all courts within a judicial circuit, the chief judge is best equipped to assess the needs of each trial court and to allocate the judicial labor available within the circuit accordingly." Wild, 672 So.2d at 17-18 (footnote omitted).
The petitioners make two challenges relating to the definition of a "retired judge." First, they argue that only *1138 those judges who have reached the constitutional age of retirement, seventy years of age, meet the definition of a retired judge who may be temporarily appointed to judicial service under article V, section 2(b). The petitioners rely upon the judicial eligibility provision in article V, section 8 of the Florida Constitution, which provides, in pertinent part, that "[n]o justice or judge shall serve after attaining the age of seventy years except upon temporary assignment or to complete a term, one-half of which has been served." The petitioners contend that when the mandatory retirement provision in article V, section 8 is read in pari materia with the judicial appointment power in article V, section 2(b), we must conclude that only those judges who have reached retirement age are eligible for temporary appointment. Second, the petitioners contend that only those judges who are eligible for retirement benefits under the state retirement system qualify as retired judges who may be temporarily appointed to judicial service under article V, section 2(b). Thus, the petitioners argue, persons who have resigned from judicial office or have chosen not to seek reelection to judicial office are not qualified for appointment as senior judges. The petitioners argue that these eligibility restrictions on the appointment of senior judges diminish the intrusion on the constitutional right to suffrage as the judges who have performed the required years of judicial service have withstood the challenge of election and reelection and have a demonstrated history of support by their electors.
We are not persuaded by either argument. The Florida Constitution gives the chief justice authority to assign "retired justices or judges" to temporary duty. Art. V, § 2(b), Fla. Const. For the purpose of judicial administration, a retired judge is defined as "a judge not engaged in the practice of law who has been a judicial officer of this state." Fla. R. Jud. Admin. 2.030(a)(3)(B). Florida Statutes also define a retired judge as "any former justice or judge" who has not been defeated in seeking reelection or retention in his or her last judicial office and is not engaged in the practice of law. See § 25.073(1), Fla. Stat. (2001) (emphasis added). Thus, under both the Rules of Judicial Administration and the Florida Statutes there are only two restrictions on the eligibility of retired judges who may be assigned to temporary judicial duty: they may not be engaged in the practice of law; and they may not have been defeated for reelection or retention in their last judicial office.
In our recent review of the Report and Recommendations of the Committee on the Appointment and Assignment of Senior Judges, we concluded that "deference to the constitutional electoral process dictate[s]" that "judges or justices who fail to win reelection or retention in their last judicial position are not eligible for senior judge service." In re Report & Recommendations of the Committee on Appointment & Assignment of Senior Judges, op. at 6, 847 So.2d 415, 418, 2003 WL 1987980 (Fla. May 1, 2003). However, the same concerns do not attend the temporary assignment of qualified and competent judges who have chosen to resign from judicial office before reaching the constitutional age of retirement or who are not yet eligible for retirement benefits under the state retirement system. Thus, we find no merit to the definition challenges raised by the petitioners.
Finally, the petitioners argue that senior judges may not be appointed for matters of convenience and instead all senior judge appointments must be measured by an "emergency of public business" standard. The petitioners cite our opinion in Spector v. Glisson, 305 So.2d 777 (Fla.1974), to *1139 support the "emergency of public business" standard. Spector involved the question of whether a Supreme Court justice's resignation tendered for a future date created a current vacancy that should be filled during an upcoming general election. In concluding that a present vacancy had been created and that the vacancy could be filled in the upcoming election,[4] this Court stated:
It has been said that the only excuse for the appointment of any officer made elective under the law is founded on the emergency of the public business and that when an elective office is made vacant the policy of the law is to give the people a chance to fill it as soon as possible.
Id. at 781 (quoting 63 Am.Jur.2d, Public Officers and Employees § 128). When considered in its proper context, this opinion neither addressed the chief justice's constitutional power to assign judges to temporary duty nor created an "emergency of public business" before that power could be exercised.
The express language of the constitutional provision which gives the chief justice the power to appoint judges does not restrict the power to "emergencies." Indeed, this Court has consistently measured the power to make temporary assignments by a standard of flexibility and efficiency. See, e.g., Rivkind, 672 So.2d at 820-21 ("We find that the judicial assignments at issue constitute a logical and lawful means to ensure the expeditious and efficient resolution of domestic violence issues in the Eleventh Circuit.") (emphasis added); Wild, 672 So.2d at 18 ("When a chief judge exercises this delegated assignment authority, the judge is acting under the Chief Justice's constitutional power to make temporary judicial assignments to ensure the speedy, efficient, and proper administration of justice within the various circuits.") (emphasis added); Holsman, 667 So.2d at 772 ("The assignment... is used to maximize the efficient administration of justice...."); Crusoe, 472 So.2d at 1165 ("Flexibility must be given the chief judge to utilize effectively judicial manpower in the mutual assistance of each trial court."). Thus, we conclude that an assignment which meets the constitutional requirement of "temporary duty" need not be based on an emergency of public business.
For the reasons discussed above, we conclude that the assignment of cases to the senior judge docket in the Seventeenth Judicial Circuit is constitutional and in accord with applicable law. Thus, we deny the petitions for writ of prohibition, lift the stay on further proceedings below, and remand this cause to the Seventeenth Judicial Circuit.
It is so ordered.
ANSTEAD, C.J., WELLS, J., and SHAW and HARDING, Senior Justices, concur.
WELLS, J., concurs with an opinion.
LEWIS, J., concurs in part and dissents in part with an opinion.
PARIENTE and QUINCE, JJ., concur in result only.
WELLS, J., concurring.
I concur with the majority's decision.
I write to express my view, however, that it is clearly necessary to the proper administration of justice in our trial courts for the chief judge and trial counsel in each circuit to have an ongoing meaningful *1140 discussion about the type of problems which have been raised in these proceedings and before our Committee on the Appointment and Assignment of Senior Judges. We on this Court are very dependent on the chief judges of the circuits to exercise their discretion in the administration of the circuits because each circuit has different problems which can only be effectively worked upon by those who have daily experience at the local level. The chief judges and their administrative judges benefit from regular and substantive meetings with trial counsel. Many of our chief judges presently do this. However, I believe that there needs to be a regularly working committee in each circuit for this purpose. I urge that in each circuit a bench-bar committee be established and that there be a meeting of this committee at least once every three months. This committee should consist of the chief judge of the circuit, all administrative judges in the circuit, and selected counsel participants who are active trial lawyers in the circuit. I suggest that the counsel participants be either some or all of the circuit's representatives on the Board of Governors of The Florida Bar or their nominees.
LEWIS, J., concurring in part and dissenting in part.
While I agree with the rejection of several challenges presented here, I write to express my disagreement with the majority's determination that the assignments of senior judges in the Seventeenth Judicial Circuit are indeed "temporary," and that the circuit has not effectively created a special senior division for the purpose of trying complex civil cases.[5] I believe that the pattern of assigning such cases in that circuit exceeds the constitutional parameters permitting the assignment of senior judges for temporary service. In approving this de facto division, I believe this Court has permitted the concept of temporary assignmentconceived to serve important public intereststo evolve into a constitutionally impermissible broad rule of convenience. Moreover, I believe a separate "complex case" or "senior judges'" docket has been created in violation of this State's constitutionally mandated court structure. Thus, for the reasons articulated herein, I must dissent from the majority's determination that the assignment process in the Seventeenth Judicial Circuit is constitutionally proper.
The ability of the Chief Justice of this Court to make temporary judicial assignments is grounded in the need to ensure the speedy, efficient, and proper administration of justice. See Wild v. Dozier, 672 So.2d 16, 18 (Fla.1996). Senior judges are a vital part of achieving this important goal. By appointing senior judges, judicial circuits can increase case disposition, address court emergencies, and solve calendar conflicts in a cost-effective manner. However, neither the need for efficiency nor the corresponding ability of senior judges to meet that objective justifies exceeding the constitutional requirement that nonelected judges receive assignment on a temporary basis, only. See art. V, § 2(b), Fla. Const. We cannot allow the goal of judicial efficiency, however laudable it may be, to trammel clear and direct constitutional directives. See Wild, 672 So.2d at 21 (Kogan, J., concurring in part and dissenting in part).
In reaching its decision, the majority must engage in a "judicial wink" as it considers the true definition of "temporary." As recognized by this Court, "[t]emporary is an antonym for permanent." *1141 Crusoe v. Rowls, 472 So.2d 1163, 1165 (Fla.1985) (internal quotation marks omitted). A temporary assignment, by definition, cannot "usurp, supplant, or effectively deprive circuit court jurisdiction of a particular type of case on a permanent basis." Id. Our decision in Payret v. Adams, 500 So.2d 136 (Fla.1986), compels us to be wary against circumstances rendering de facto permanency to allegedly temporary assignments. See id. at 138 (invalidating an assignment that was successive and repetitive, having been renewed annually for a period of five years). Thus, we must examine the judicial assignment's duration as well as its nature, the type of cases covered, and the practical effect of the assignment on circuit court jurisdiction over a particular type of case. See Wild, 672 So.2d at 19.
The regularized process of assigning complex civil cases to senior judges in the Seventeenth Circuit effectively supplants the jurisdiction of active judges over those matters. The invalidity of this process is not mitigated by the fact that not every complex civil litigation matter is assigned to the senior judges' docket. A substantial percentage are, with consequent impact on the rights of the parties involved. There is no corresponding emergency, such as a violation of the speedy trial rules, to justify consistent reassignment of these cases. Indeed, the only justification offered is the mantra of judicial efficiency, which, however noble, cannot create its own constitutional foundation that so clearly violates constitutional strictures.
In determining that no special division has been created in the Seventeenth Judicial Circuit, the majority, in my opinion, glosses over the practical de facto effect of the process in operation there. By giving notice that the trial of a case will likely exceed two-and-a-half weeks, attorneys can almost ensure placement on the docket slated for hearing by a senior judge. The process effectively allocates cases to a distinct group of judgesnot by subject matterbut by the complexity of the case and projected length of trial. Cf. Mann v. Chief Judge of the Thirteenth Judicial Circuit, 696 So.2d 1184, 1185 (Fla.1997). Thus, a distinct de facto "complex case" division has been created in the Seventeenth Judicial Circuit without issuance of a local rule in accordance with proper procedure.
In Broward County, senior judges have become a de facto permanent circuit division for the trial of complex civil cases not by the method authorized by the Florida Constitution, but by judicial direction. While I understand the demands placed upon those responsible for the administration of the local system and the current status of resources, a de facto system such as this exists beyond constitutional parameters, and I must respectfully dissent from the majority opinion as outlined herein.
NOTES
[1] In our recent review of the Report and Recommendations of the Committee On Appointment and Assignment of Senior Judges, "we acknowledge[d] the reality of problems in isolated cases with senior judges presiding over complex and lengthy trials" and urged chief judges "to respond directly to concerns expressed when such problems are presented to them." In re Report & Recommendations of the Comm. on Appointment & Assignment of Senior Judges, op. at 15, 847 So.2d 415, 422, 2003 WL 1987980 (Fla. May 1, 2003). Despite such problems, we declined to adopt "either a per se prohibition on the assignment of senior judges to complex cases or a requirement that chief judges be required to show a good cause for such assignments," recognizing that "[c]hief judges must be afforded deference and latitude in the management of judicial assignments and dockets." Id. at 15-16, at 422. Finally, we reminded the chief judges of their duty to "select senior judges with the proper skills and experience to preside over complex cases when such assignments are necessary" and their responsibility to "periodically review[] the progress of all cases assigned to senior judges to ensure expeditious and proper handling." Id. at 16, at 422.
[2] The Kahn petition makes two challenges that were not raised below: the time standards for civil litigation are violated by the use of senior judges and the intent of the Medical Malpractice Reform Act is similarly violated. This Court should not address issues relating to judicial assignments that have not been raised to the trial court. See Wild. Accordingly, we decline to address these challenges.
[3] Article V, section 7 of the Florida Constitution provides that "[a]ll courts except the supreme court may sit in divisions as may be established by general law." Section 43.30, Florida Statutes (2001), provides that divisions may be created by a local rule which is approved by this Court. Thus, a special division may not be created by means of the temporary appointment power of the chief justice which is delegated to the chief judges of the circuit courts.
[4] At the time of our decision in Spector, appellate judges and Supreme Court justices were subject to election by the voters. In November 1976, Florida voters approved an amendment whereby appellate judges and justices are subject to merit selection and retention. See art. V, § 10(a), Fla. Const.
[5] While the problem presented here may be unique to the Seventeenth Judicial Circuit, that fact, standing alone, does not relieve this Court of its responsibility to ensure that the circuit adhere to constitutional constructs governing judicial assignments.